Filed: 10/29/2021 4:14 PM
Clerk
St. Joseph County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | THE ST. JOSEPH CIRCUIT/SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF ST. JOSEPH | ) | CAUSE NO.: 71D06-2110-CT-000399 |

| | |
|---|---|
| DAMON JOHNSON, | ) |
| Plaintiff, | ) |
| v. | ) |
| NFI INDUSTRIES, INC., | ) |
| Defendant. | ) **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Damon Johnson, by counsel, and for his Complaint against Defendant, NFI Industries, Inc. ("NFI"), states and alleges the following:

### I. NATURE OF THE ACTION

1. Plaintiff Damon Johnson brings this action pursuant to the Family Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq* ("FMLA") to remedy Defendant NFI's violations of FMLA. Plaintiff contends NFI interfered with Plaintiff's ability to take intermittent leave under FMLA and retaliated against Plaintiff within his employment when NFI stripped Plaintiff of his seniority and adversely changed Plaintiff's employment terms and conditions as a result of Plaintiff taking medical leave.

### II. THE PARTIES

2. Plaintiff, Damon Johnson ("Damon"), is a male citizen of the United States and resident of St. Joseph County, Indiana.

3. Defendant, NFI, is a New Jersey corporation which has a physical location in St. Joseph County, Indiana, from which it operates and employees at least 50 employees.

### III.     JURISDICTION AND VENUE

4. The Court has jurisdiction of this matter pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C.A. § 2617 which allows Plaintiff to bring this action in any Federal or State court of competent jurisdiction.

5. Venue is proper because the events giving rise to this action occurred in St. Joseph County, Indiana.

### IV.     FACTS

6. In January 2015, NFI hired Damon as a full-time truck driver earning an hourly wage.

7. Damon had received positive performance reviews throughout his employment with NFI.

8. Based on Damon's work performance and seniority at NFI, Damon earned privileges such as 8-to-10-hour shifts, regular routes and two consecutive days off.  NFI allowed Damon to have Sunday as one of his two (2) consecutive days off per week based on his religious accommodation.

9. Newer employees did not have regular consecutive days off, worked longer shifts and were assigned routes that varied from day to day.

10. At the end of 2018, Damon's father had become ill with a serious health condition and in need of care.  In response to the condition of Damon's father, Damon requested leave pursuant to the Family Medical Leave Act to take care of his father.

11. On October 22, 2018, NFI's Human Resources Department ("HR") granted Damon's intermittent FMLA leave request to continue until November 18, 2018.

12. Damon took one day off a week to care for his father until the approved end date of November 18, 2018.

13. Before the end of the approved leave period, Damon informed his supervisor that Damon's father was still ill, and Damon will likely need to request additional intermittent medical leave under FMLA.

14. Damon's supervisor immediately took Damon off the work schedule for approximately one month.

15. Damon had not requested a full month off, and had not received any disciplinary action to warrant a suspension.

16. During the month Damon's supervisor refused to schedule Damon for work, Damon attempted multiple times to call and text his supervisor to inquire why he had not een scheduled to work and to inquire when he could return to work.

17. Damon's supervisor never responded to Damon's inquiries about being taken off the work schedule or about when Damon would be allowed to return to work.

18. Damon eventually contacted the Human Resource Department ("HR") to complain that Damon was retaliated against for requesting and taking intermittent medical leave.

19. HR informed Damon that he could return to work in January of 2019 and that HR would look into Damon's complaint of retaliation.

20. Damon was allowed to return to work. However, NFI did not provide Damon any notes or findings stemming from an investigation of Damon's complaint, nor did NFI reprimand Damon's supervisor for taking Damon off the work schedule for the extended period.

21. Due to NFI's failure to address Damon's complaint, Damon contacted his supervisor again in attempt to express Damon's concerns and get clarity on why Damon was not scheduled to work.

22. Damon emailed his supervisor on January 16, 2019, to explain that due to his supervisor's refusal to respond to Damon's correspondence, Damon had to complain to HR about his supervisor's retaliation against Damon for requesting and taking medical leave.

23. Damon's supervisor emailed Damon back, but did not address Damon's retaliation concerns or answer Damon's initial inquiry about being left off the work schedule for about a month. Damon's supervisor responded only by requesting Damon provide an updated physical.

24. When Damon returned to work in January 2019, Damon requested and was approved for more intermittent medical leave under FMLA. Damon was granted two (2) days of leave per week to care for his father.

25. After taking this additional intermittent leave, NFI altered Damon's work schedule.

26. Damon had been stripped of his two (2) consecutive days off and, instead, had "split" days off. This altered schedule did not permit Damon to take Sunday off anymore, a day Damon had scheduled off since 2017 to allow him to go to church.

27. Damon was also now required to work fourteen (14) hour days instead of 8-to-10-hour days; Damon's regular routes were taken from him; and Damon was, again, taken off the work schedule for another extensive period.

28. Other employees who did not request or take leave under FMLA were able to keep their same schedules with consecutive days off and their regular routes.

29. Damon continued to complain to management about the adverse changes within his employment following Damon exercising his right to request and take leave under FMLA.

30. Damon complained to management that the adverse changes within his employment were retaliatory and hindering his ability to care for his father.

31. After NFI continued to refuse to change Damon's schedule and routes back to the way they were prior to his leave under FMLA, Damon had no choice but to terminate his employment with NFI in November 2019.

## V.   COUNT I - VIOLATION OF THE FMLA:  INTERFERENCE

32. The foregoing paragraphs are realleged and incorporated by reference herein.

33. At all relevant times to this action, Damon was an employee, and NFI was a covered employer under FMLA.

34. At all relevant times to this action, Damon was entitled to leave under FMLA, and Damon's father had a qualified medical condition under FMLA.

35. Damon gave notice to NFI that he intended to take intermittent medical leaves to care for his father.

36. Each time Damon requested to take leave under FMLA, NFI removed Damon from the work schedule for extended periods which interfered with Damon's right to take intermittent leave under FMLA instead of missing multiple weeks of work at a time.

37. When NFI removed Damon from the work schedule for extended periods, it was an adverse action which was intended to discourage Damon from taking intermittent leave under FMLA.

38. Due to NFI's willful and intentional violation of the FMLA, Damon suffered adverse employment action and continues to suffer financially and emotionally for which he is entitled to relief from NFI.

## VI.     COUNT II - VIOLATION OF THE FMLA: RETALIATION

39. The foregoing paragraphs are realleged and incorporated by reference herein.

40. At all relevant times to this action, Damon was an employee, and NFI a covered employer under FMLA.

41. At all relevant times to this action, Damon's father had a qualified medical condition under FMLA.

42. Damon exercised his right under FMLA when he requested and took intermittent medical leaves to care for his father.

43. Damon's requests and intermittent leaves under the FMLA were protected activity.

44. NFI negatively changed the terms and conditions of Damon's employment after Damon exercised his rights under FMLA.

45. NFI's decision to negatively change the terms and conditions of Damon's employment and constructively discharge him was substantially motivated by the fact that Damon exercised his rights under FMLA.

46. Due to NFI's willful and intentional violation of the FMLA, Damon suffered adverse employment action and continues to suffer financially and emotionally for which he is entitled to relief from NFI.

## VII.     PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the court award him:

(a) Reinstatement of his employment at NFI along with the benefits and working conditions Plaintiff had prior to taking leave under FMLA;

(b) Compensatory damages in an amount reasonable to compensate him for damages suffered as a result of the FMLA violations;

(c) A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

(d) Liquidated damages in whatever amount Plaintiff is found to be entitled;

(e) An award of pre- and post- judgment interest, costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(f) Other damages and further relief as deemed just.

Respectfully submitted,

/s/ Myra R. Reid
Myra R. Reid  | 35583-71
ANDERSON, AGOSTINO & KELLER, P.C.
131 S. Taylor Street
South Bend, IN 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
E-mail: reid@aaklaw.com

*Attorney for Plaintiff*

## JURY DEMAND

Pursuant to Rule 38 of the Indiana Rules of Civil Procedure, Plaintiff hereby requests a trial by jury.

/s/ Myra R. Reid
Myra R. Reid  |  35583-71